# LARRY EDWARD LOGUE *v.* STATE OF MARYLAND

[No. 107, September Term, 1977.]

*Decided May 25, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Arthur A. DeLano, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*F. Ford Loker, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

Larry Edward Logue (Logue) was indicted for daytime housebreaking which occurred on May 5, 1975. He filed a

pre-trial motion to suppress certain evidence, seized by the police from his home, which identified him as the perpetrator of the crime charged. On December 10 and 11, 1975, Judge James H. Taylor of the Circuit Court for Prince George's County conducted a hearing and denied the motion. Logue renewed his motion before Judge Taylor who, after hearing additional argument, denied the motion again on April 6, 1976.

Logue was tried before a jury (Bowie, J. presiding) and found guilty; however, he filed a motion for a new trial, alleging that the trial judge had given an erroneous instruction on Logue's right against self incrimination. This motion was granted and a new trial scheduled. On October 6, 1976, Logue appeared for trial and renewed his motion to suppress, requesting a rehearing. When questioned by the court, he admitted that he had no evidence to offer that had not already been presented in the previous hearings on the motion. Judge Couch denied the motion to suppress on the ground that another member of the bench had already held a hearing on the matter and had declined to suppress the evidence. Logue was tried by a jury, convicted and sentenced to imprisonment for three years. The Court of Special Appeals affirmed the judgment in *Logue v. State,* 37 Md. App. 41, 375 A. 2d 51 (1977).

We granted certiorari to consider two questions:

1. Whether the granting of a new trial entitled Logue as a matter of right to a rehearing on his motion to suppress.

2. Whether the motion to suppress should have been granted.

I.

Logue's primary contention is that having been granted a new trial, the slate was wiped clean and there was no vestige of the prior proceeding. He relies on *Hobbs v. State,* 231 Md. 533, 191 A. 2d 238 (1963), where the Court said, "On a trial de novo the court hears the case as if it were being tried for the first time, and considers the entire matters of verdict, judgment and sentence as if there had been no prior trial." (231 Md. at 535). The State, on the other hand, claims that

Maryland Rule 729 [1] is dispositive of this issue, which is one of first impression for this Court.

Rule 729 dictates the procedure to be followed in suppressing evidence obtained by an unlawful search and seizure. When a motion to suppress is filed five or more days before trial, the trial judge is required to conduct a pre-trial hearing (Rule 729 (d) (1)); in other cases, the trial judge may exercise his discretion and determine if the hearing will be conducted before or during the trial. In any event, any hearing on the motion, or any objection made to the introduction of evidence allegedly obtained through an unlawful search or seizure, must be heard outside the presence of the jury. (Rule 729 (d) (2)).

The pertinent part of the Rule in considering this case is found in Section (g) (2):

> If such motion [to suppress] or petition is denied prior to trial of the criminal case, the pre-trial ruling shall be binding at the trial unless the trial judge, in the exercise of his discretion grants a hearing *de novo* on the defendant's renewal of his motion or objection. A pre-trial ruling, denying a motion or petition to suppress, exclude or return property seized, shall in any event be reviewable on appeal to the appropriate appellate court or on a hearing on a motion for a new trial.

The plain meaning of this language permits the trial judge to be bound by the pre-trial ruling, unless he takes affirmative action and hears the motion *de novo,* at which time he can make his own independent determination of admissibility. The rule is discretionary and not mandatory. *See, e.g., Waugh v. State,* 275 Md. 22, 338 A. 2d 268 (1975), where the Court held that since the testimony at the hearing was not fully accurate, the trial judge abused his discretion in not granting a rehearing. *See* also *McChan v. State,* 9 Md. App. 317, 264 A. 2d 133, *cert. denied,* 258 Md. 729 (1970), where the Court of Special Appeals held that a pre-trial motion to suppress, fully

---

1. The subject matter of this rule is now included in Maryland Rule 736; however, we shall use the old designation throughout this opinion.

heard in the Criminal Court of Baltimore, was not entitled to be the subject of another hearing because the case was removed to the Circuit Court for Anne Arundel County.

Logue, nevertheless, contends that these cases are inapposite since they do not involve a new trial which he further contends nullifies all prior proceedings. The fallacy in his argument is that he perceives all phases of his prosecution from arrest to sentence as part of his trial. With this proposition we disagree. The trial of an accused is that phase of the proceeding where evidence is submitted to the fact finder in open court to determine the guilt or innocence of a defendant; a new trial or trial *de novo* is granted the defendant to afford him an opportunity to reexamine an issue of fact with a view to correcting errors which have occurred in the course of the preceding trial. It is the function of the trial judge to determine what evidence shall be considered by the jury and in doing so he makes this determination outside the presence of the jury. Thus a motion attacking the charging document, a motion to suppress identification testimony, a motion to suppress evidence unlawfully seized are all matters conducted by the trial judge outside the presence of the jury for the protection of the defendant to assure him a fair trial. When such motion has been fully heard and considered and there is no new evidence which was unavailable at the first hearing, the trial judge may exercise his discretion and bind himself by the prior ruling whether the proceeding is the original trial or a new trial. We hold, then, that the rehearing of a motion to suppress upon the granting of a new trial is governed by Maryland Rule 729 (g) (2) and that, in the instant case, the trial judge did not abuse his discretion by declining to rehear the motion.

## II.

Logue urges as a second contention that his original motion to suppress should have been granted because the evidence was unlawfully seized as the result of a warrantless search. To more carefully consider this contention, we shall set forth the pertinent facts.

On May 5, 1975, Officer McDaniel of the Prince George's

County Police Department responded "to a burglary in progress" at the home of Joseph Fearson, who informed the officer that he had discovered an intruder inside his home. The intruder was described as a white male, approximately 25 years of age with shoulder length reddish brown hair and a beard, wearing a gray sweat shirt that zippered up in front and brown pants. Fearson identified the intruder's photograph.

Officer McDaniel testified that he and several other officers drove to Logue's home where they remained for about an hour when two women drove up, one of whom was the woman Logue lived with (Dodson) and the other was his step-mother (Mrs. Logue). McDaniel told them that the police were there to arrest Logue for a recent burglary. Dodson appeared to be upset and told them that somebody had been in the house and had let her monkey out. McDaniel and several other officers assisted her in chasing the monkey back into the house. Dodson then entered the house and the officers remained outside.

When Dodson came back outside, McDaniel again advised her that they were there to arrest Logue. Dodson replied that he was not at home but that they could come in and look if they wanted to. Officer Meloy remained in the front room of the house, and McDaniel looked throughout the house, accompanied by Dodson. Upon entering the master bedroom, McDaniel saw clothing lying on the bed which matched the description given to him. After searching the rest of the house for Logue, they returned to the master bedroom. McDaniel told Dodson that the clothing matched the description he had, and requested that she search through the pockets for personal belongings, so he would not inadvertently take custody of them. She went through the pockets and removed a "padlock type lock" which was subsequently identified as belonging to Fearson. McDaniel took the clothing and lock into custody.

Dodson testified at the hearing that she never invited the policemen into her home; that when she returned home she found police surrounding the house and both doors were open; that while she was making a phone call one of the officers

entered the house without her knowledge, went directly to the bedroom, and seized the clothing. Mrs. Logue corroborated this.

Officer Meloy testified that Dodson demanded to see a warrant when she arrived at home. McDaniel told her that an arrest warrant was being obtained, and then Dodson permitted their entry into the house.

Judge Taylor, in ruling on the motion to suppress, indicated that it was purely a matter of credibility. He said he believed the officers over Dodson and Mrs. Logue because the officers had no motive to lie and the women did.

Logue contends that, on these facts, the evidence seized in the search of his home should have been suppressed. He bases his contention on two alternative grounds: first, that no consent was ever given by Dodson to the police to search his home; and second, that if consent was given, it was done under duress and coercion and was therefore involuntary.

We note that the State bears the burden to prove that the consent to search was in fact voluntarily given and did not result from duress or coercion, express or implied. *Schneckloth v. Bustamonte,* 412 U. S. 218, 248, 93 S. Ct. 2041, 2059, 36 L.Ed.2d 854, 875 (1973); *State v. Wilson,* 279 Md. 189, 201, 367 A. 2d 1223, 1231 (1977); *Whitman v. State,* 25 Md. App. 428, 437, 336 A. 2d 515, 520 (1975); that the State must prove voluntariness by a preponderance of the evidence; and that on appeal we are required to make an independent constitutional appraisal of the evidence to resolve the question of voluntariness. *Davis v. North Carolina,* 384 U. S. 737, 741-742, 86 S. Ct. 1761, 1764, 16 L.Ed.2d 895, 898 (1966); *State v. Wilson, supra,* 279 Md. at 202. In our review of this question, we also give great weight to the findings of the judge who ruled on the motion.

We have fulfilled our obligation by examining the transcripts of testimony in the suppression hearing before Judge Taylor and we find no constitutional impediment in his conclusion that the police officers were more believable than the witnesses for Logue and that Dodson consented to the search. Nor does our examination of the record reveal that Dodson was coerced, deceived or tricked into consenting to

the search of the premises for Logue. Indeed, she had already been into the premises and had every reason to believe that as far as Logue was concerned, a search would prove fruitless. She had no reason, revealed in the record, to believe that any of his clothing or other personal effects would be incriminating. We find, therefore, on our independent examination of the record, that the consent given to the police to enter the subject premises and search for Logue was voluntary and the hearing judge properly denied the motion to suppress.

*Judgment affirmed.*
*Costs to be paid by appellant.*