552 A.2d 928

Oscar James GAMBLE

v.

STATE of Maryland.

No. 726, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Feb. 1, 1989.

Benjamin R. Wolman (Wolman & Lucchi, on the brief), Upper Marlboro, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County of Upper Marlboro, on the brief), for appellee.

Argued before GILBERT, C.J., and WILNER and ROSALYN B. BELL, JJ.

GILBERT, Chief Judge.

If this case were being reported by *True Detective* or some other crime journal, it would probably be titled: "Gamble's Gamble." It is a tale about a police officer who forgot on which side of the law he was supposed to be. Officer Oscar James Gamble yielded to the temptation of "pocketing" $10,000 discovered in a "drug bust" and ended up in the dock.

### The Facts

On the parking lot of a Prince George's County motel, Gamble arrested three individuals suspected of illegally transporting narcotics. One of the arrestees, Thompson,

led Gamble to a motel room, where the latter was to obtain a key in order to unlock the trunk of Thompson's car so that it could be searched. Upon entering the motel room Gamble observed other persons there, and he noticed drug paraphernalia present. The occupants of the room were arrested.

A search conducted by Gamble, his partner, Officer Sanders, and Sgt. Harris, who had responded to Gamble's radio request for assistance, uncovered weapons, drugs, and cash. Harris then instructed Gamble to return to the station house to obtain a van for the purpose of transporting the several arrestees. After Gamble set out on his assigned task, Thompson told Harris that Gamble had taken $10,000 in cash from the motel room. Harris then ordered Gamble to return to the motel area where he was asked to display the evidence he had removed from the motel room. Gamble displayed a gun and some cash totaling between $300 and $400. Harris repeated to Gamble the accusation Thompson had made. Gamble emphatically and graphically, by the use of a bovine expletive, denied having taken the money. Harris then directed Gamble to return to headquarters.

As soon as Gamble departed from the motel area, Officer Sanders informed Harris that Gamble had failed to show Harris the gym bag that Sanders had loaned to Gamble that day. Harris, upon receiving that information, followed Gamble to the station house. There he observed Gamble take two bags inside. When Gamble came out of the building, he went to his police cruiser. Although Harris could not see exactly what Gamble was doing at the automobile, the CB antenna on the police vehicle was observed moving up and down. From that particular motion Harris inferred that someone opened and closed the trunk of the car.

Harris immediately reported his observations to two of his superiors, Sgt. Elliot and Lt. Evans. Elliot then confronted Gamble with the theft accusation and asked if Gamble would mind opening the trunk of the cruiser. Gam-

ble replied, "No," and opened the trunk. In the trunk Elliot found two bags; one contained $10,000.00.

Gamble was promptly placed under arrest. He was tried and convicted in a non-jury trial (Rea, J.) in the Circuit Court for Prince George's County of misconduct in office and one count of theft of property valued in excess of $300. Two concurrent one year sentences, both of which were suspended, were imposed on Gamble, and he was placed on three years of probation.

## The Issues

Gamble advances a twain of issues as to why he believes the judgment of the circuit court should be reversed. He asserts:

I. The trial court erred in denying appellant's motion to suppress evidence seized during a search of his police cruiser.

II. The evidence presented was insufficient to sustain appellant's conviction of theft.

## I.

### The Search

Gamble contends that the evidence used against him at trial, namely the $10,000 found in the gym bag in the trunk of his cruiser, was inadmissible because it was the fruit of an illegal search. We, however, have an entirely different view.

The police needed no warrant to search Gamble's cruiser since it was police property, and no warrant is required to search one's own property. *See generally O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). The policy that allowed officers to use cruisers for personal purposes clearly made the vehicles subject to police inspection, at any time, without the user's permission. Nevertheless, Gamble still possessed a legitimate expectation of privacy in the closed, zippered gym bag. That privacy expectation was waived, however, when

Gamble consented to the search of the trunk of the automobile. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Smith v. State,* 62 Md.App. 627, 490 A.2d 1307 (1985).

■ Implicit within the consent to search the trunk of the vehicle is the consent to search any and all unlocked or unsealed packages, bags, or containers found within the trunk. Were this not the situation, consensual searches of trunk compartments of vehicles would be almost meaningless. It would apply to the physical parts of the vehicle only.

As we have seen, Sgt. Harris testified that Sgt. Elliot asked to look into the trunk. Elliot testified that he asked Gamble to open the trunk. On the basis of either testimony, it is clear that Gamble consented to the opening of the trunk.

■ The scope of Gamble's consent to the search is illuminated by examining the alternatives available to him at the time. Sgt. Elliot told the court that he had the authority under the personal-use-of-vehicle program to inspect the police cruiser without Gamble's permission. Had Gamble refused to consent to the search, Elliot still could have searched the vehicle. Moreover, had Gamble balked at consenting to the search, he might have been administratively suspended from his job. Furthermore, if Gamble did not permit the search, the authorities would have been within their right to impound the cruiser and conduct an inventory search. The evidence, if any, obtained from that search would have been admissible against Gamble in a criminal proceeding. *See Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). *See also South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In short, Gamble found himself between the proverbial "rock and a hard place." Apparently "with that hope which springs eternal in the human

breast,"[1] he decided to consent to the search with the thought that the search might be less thorough than it actually was or that a "soft spot" in the rock would somehow be found. Gamble failed to convince the trial court that the consent was less than a knowing and intelligent waiver of his Fourth Amendment right. Our review of the record fails to convince us that Judge Rea's fact finding was clearly erroneous. Md.Rule 8–131(c). Indeed, the fact finding with respect to the consensual search was not erroneous at all.

## II.

### The Sufficiency

Gamble next argues that the evidence was insufficient to support his conviction of theft. He contends the State failed to prove a trespassory taking, an essential element of the crime of theft. *Lee v. State,* 59 Md.App. 28, 474 A.2d 537 (1984), is dispositive of this issue. *Lee* presented this Court with the question whether a person can be convicted of shoplifting in a self-service store, if the defendant did not remove the goods from the premises.

■ The primary elements of theft are: willfully and knowingly obtaining unauthorized control over the property or services of another, by deception or otherwise, with the intent to deprive the owner of his property by using, concealing, or abandoning it in such a manner that it probably will not be returned to the owner. Md.Ann.Code art. 27, § 342. *Lee v. State,* 59 Md.App. at 35, 474 A.2d 537. *See* R. Gilbert and C. Moylan, *Maryland Criminal Law: Practice and Procedure,* § 19.0 (1983).

■ In *Lee,* Judge Rosalyn B. Bell, for the Court, concluded that "the fact that the owner temporarily consents to possession does not preclude a conviction for larceny if the customer exercises dominion and control over the property

---

1. Ernest Lawrence Thayer's "Casey at the Bat," L. 2, St. 2 (1888).

by using or concealing it in an unauthorized manner." *Lee v. State,* 59 Md.App. at 36, 474 A.2d 537. We commented in *Lee* that such conduct would satisfy the element of trespassory taking because it implies an intent to deprive the rightful owner of the property. *Id.*

The finding of the $10,000 in a gym bag used by Gamble, even though physically in the police cruiser, when coupled with Gamble's denial of having taken the money, leads any reasonable mind to conclude that Gamble took the money with the intent permanently to deprive the rightful owner of it. The evidence was sufficient to demonstrate beyond a reasonable doubt that Gamble gambled and lost.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.