567 A.2d 95

Oscar James GAMBLE

v.

STATE of Maryland.

No. 30, Sept. Term, 1989.

Court of Appeals of Maryland.

Dec. 21, 1989.

Benjamin R. Wolman (Wolman & Lucchi, on brief), Upper Marlboro, for petitioner.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

This case presents questions of whether a police officer's consent to a search of the trunk of his police cruiser was voluntary, and if so, whether the search of a container within the trunk exceeded the scope of the consent. The Court of Special Appeals upheld the validity of the search. *Gamble v. State*, 78 Md.App. 112, 552 A.2d 928 (1989). We shall affirm.[1]

---

1. Because we dispose of the case on the consent issue, we need not consider petitioner's arguments as to his expectation of privacy in the police cruiser and its contents; the lack of probable cause for a warrantless search; the nonapplicability of the *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1926), "automobile" doctrine; or the proper scope of a workplace search.

## I.

Although we shall review the pertinent facts in greater detail later, we now sketch them in order to place the issues in context.

Petitioner Oscar James Gamble was a plain-clothes member of the Prince George's County Police Department. Assigned to him, for both official and limited personal use, was an unmarked police cruiser. On 25 August 1987 Gamble and his partner, Officer Alvin G. Sanders, participated in a narcotics arrest at a Prince George's County motel. One of the suspects told Police Sergeant Solomon Harris, who also was at the arrest scene, that Gamble had made off with $10,000 in currency that had been in the possession of the suspects. A cursory check of Gamble at the scene did not reveal the currency. Later, at the Seat Pleasant Police Station, Gamble's supervisor, Sergeant Bruce Elliot, in company with other officers, asked Gamble to open the trunk of his police cruiser. Gamble did so. Sergeant Elliot opened a blue gym bag that was in the trunk. In the bag was $10,000 in currency.

Gamble was arrested and charged with various offenses. The Circuit Court for Prince George's County (Levin, J.) denied his motion to suppress the evidence seized from the trunk. Gamble was convicted of theft and misconduct in office. He was sentenced to two consecutive one-year sentences, both suspended in favor of three years' probation. The Court of Special Appeals, as we have said, affirmed.

## II.

Gamble claims that the search of the trunk of the police cruiser, and of the gym bag contained in the trunk, violated his fourth amendment rights against unreasonable search and seizure as well as his rights under Article 26 of the

Maryland Declaration of Rights.[2] That search was, of course, warrantless. The United States Supreme Court has said that a search conducted without the benefit of a warrant supported by probable cause is per se unreasonable under the fourth amendment, subject to only a few exceptions. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854, 858 (1973). But "[i]t is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Id.,*[3] 93 S.Ct. at 2043–2044, 36 L.Ed.2d at 858.

Judge McAuliffe, writing for this Court, has cogently summarized the major features of the law of consensual searches:

The burden of proving that the consent was freely and voluntarily given is upon the State. *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). Consent that is coerced by threats or force, or granted only in submission to a claim of lawful authority, is not voluntary. *Schneckloth v. Bustamonte,* [*supra,* 412 U.S. at 233, 93 S.Ct. at 2051, 36 L.Ed.2d at 866]. Coercion that defeats voluntariness may be by explicit or implicit means, by implied threat or covert force. 412 U.S. at 228, 93 S.Ct. at 2048. Although custody is a factor to be considered in determining voluntariness, it is not dispositive, and a person in custody may validly consent to a search. *United States*

---

**2.** Article 26 is *in pari materia* with the fourth amendment. *Birchead v. State,* 317 Md. 691, 699, 566 A.2d 488, 492 (1989); *Givner v. State,* 210 Md. 484, 492, 124 A.2d 764, 768 (1956). Gamble advances no argument that under the circumstances of this case his Article 26 rights in any way vary from his fourth amendment rights.

**3.** In our discussion of the "consent" issue in this case, we assume, without deciding, that Gamble's expectation of privacy in the trunk of the police cruiser was as great as that he would have had with respect to the trunk of his personally owned vehicle.

*v. Watson,* 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed. 2d 598 (1976).

*Doering v. State,* 313 Md. 384, 401–402, 545 A.2d 1281, 1290 (1988).

In *Doering,* we held that the State had established the voluntary nature of the search. Although the police, who eventually searched portions of a bus in which Doering and others were residing, displayed weapons, they made no threats and claimed no authority to enter the bus. The suspects had been detained for only a brief period of time. Moreover, the police did not even request permission to enter the bus; one of the suspects volunteered the invitation. 313 Md. at 402, 545 A.2d at 1290. *See also Schneckloth,* in which the person who consented to an automobile search assisted in it by himself opening the trunk of the car. 412 U.S. at 220, 93 S.Ct. at 2044, 36 L.Ed.2d at 859.

On the other hand, in *Bumper,* the consent was not voluntary. There, four white officers went to the isolated home of an elderly black woman. When one of them informed her that they had a warrant to search the dwelling, she told them to go ahead. The Supreme Court said there can be no voluntary consent when the "consent" is given only after the official conducting the search has asserted that he or she has a lawful right to enter by virtue of a warrant. 391 U.S. at 548–549, 88 S.Ct. at 1791, 20 L.Ed.2d at 802.

> When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent.

*Id.* at 550, 88 S.Ct. at 1792, 20 L.Ed.2d at 803.

*State v. Wilson,* 279 Md. 189, 367 A.2d 1223 (1977), was a case in which we held a consent to be involuntary. Wilson's property had been searched previously, and on the subsequent occasion, the police explained their presence by what

they had found during their earlier visit. We thought that this might have caused Wilson to conclude that the current search was a warranted one, and thus that he, like the widow in *Bumper, supra,* had no alternative but to consent. 279 Md. at 203, 367 A.2d at 1232. We also pointed out that when Wilson's "consent" was given, one or more of his housemates already had allowed the police to enter the building. And we observed that although Wilson had been given *Miranda* [*v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] warnings, he had not been told of his right not to consent to a search. We believed that "the absence of this advice, coupled with the presence of the *Miranda* warnings, may well have led [Wilson] to believe that he had no right to refuse the officers' request." 279 Md. at 203, 367 A.2d at 1232.

▇ These and many other cases illustrate that the application of the *Doering* principles about the voluntariness of a consent to search ordinarily involves determination of a question of fact. This question is to be decided in light of the totality of all the circumstances. *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2048, 36 L.Ed.2d at 863. We now examine in more detail the facts surrounding the search of the trunk of Gamble's police cruiser and the container found in it. We summarize the facts as revealed during the hearing in Gamble's motion to suppress. *Trusty v. State,* 308 Md. 658, 670, 521 A.2d 749, 755 (1987) (appellate court considers the suppression hearing record, not the trial record, when deciding correctness of denial of motion to suppress). The trial court decided the issue at that hearing and granted no supplemental or de novo hearing on the question. Md. Rule 4–252(g)(2) (as amended 21 December 1988).

### III.

As we have recounted, Gamble and his unmarked police cruiser were at the Seat Pleasant Police Station, having returned from the narcotics arrest at the motel. Present, in addition to Gamble, were Sergeant Elliot (Gamble's immedi-

ate supervisor), Lieutenant Thomas Evans, Corporal Connolly, and Gamble's partner, Officer Sanders. Sergeant Elliot was aware that the $10,000 Gamble had allegedly taken from the narcotics suspects might be in a blue gym bag that Sanders had loaned Gamble earlier. Gamble knew of the accusation against him. As Sergeant Elliot recalled:

I confronted him [Gamble] with the fact this accusation had been made. He said he was already aware of it. I asked him if he would mind opening the trunk of his cruiser. He said, no, Sarg, I wouldn't. His exact words were, 'this is a bunch of bullshit. In fact, Sarg, I'll take a polygram. I did not take the man's money.'

We were walking over to the trunk of the car. He got out the keys to the trunk of the car, he opened the trunk of the car, stood back, I was directly in the center of the trunk—excuse me, ... at the rear of the car at the trunk, and at this point I began to search the vehicle....

The sergeant opened a large blue bag which contained a bowling ball, shoes, and socks. He then turned to a blue gym bag with brown trim, opened it, and found the money. Gamble said "Oh, shit."

Lieutenant Evans, the only other witness to testify for the State at the suppression hearing, largely substantiated Sergeant Elliot's testimony. Gamble, who also testified, admitted that Sergeant Elliot had asked him to open the trunk. He admitted that he complied without hesitation and that he was completely cooperative. He said, however, that he had taken the request as "[a] direct order" and that he feared that the consequences of disobedience would be "[t]he reprisal of being written up for insubordination." He explained that he had spent four and a half years in the Marine Corps. There he had learned "[t]hat whatever [a supervisor] says must be done."

Judge Levin ruled:

As the trier of fact I believe what Sergeant Elliot told me. Here's a man who ... was advised to ... get some consent and I don't have any problem with what he said

and I don't have any problem with Officer Gamble's response which I believe is what he said. You're going to clear this up and he's going to clear up the matter because he heard all about this and he's going to clear it up so go open the trunk. After they opened the trunk it evidently didn't get cleared up.

Accordingly, the motion to suppress is ... overruled.

From this account, it is apparent that this incident involved no threat, trickery, force, false reliance on a warrant, or anything of that sort. Judge Levin believed Sergeant Elliot's testimony that he had done no more than request that Gamble open the trunk—evidence supported by the sergeant's further testimony that prior to making the request, he had consulted higher authority and had been told that he could not demand entry to the trunk, but should attempt to gain access to it by consent. Gamble asks us to reject this fact-finding chiefly on the authority of *United States v. Kidd,* 153 F.Supp. 605 (W.D.La.1957).

Kidd was an enlisted man in the United States Air Force—an airman second class. His squadron commander questioned him about some barracks thievery, confronting the young man with evidence suggesting that Kidd was implicated in the thefts. Kidd denied that he was involved. The air police were called; they arrested Kidd. Kidd was questioned for several hours and eventually took the police to his car, which he kept off base. The air police "had" Kidd unlock the car which the officers searched, but found nothing. 153 F.Supp. at 608. They then said they wanted to search the trunk, which Kidd opened. They found nothing relating to barracks theft, but rather what they thought was evidence of counterfeiting, and it was that with which Kidd was charged. *Id.*

The United States District Court suppressed the evidence found in the trunk. The judge reasoned:

Kidd was arrested on mere suspicion and held under restraint for several hours, both at the Air Base and on civilian territory. This young man was under military

compulsion at all times, subject to the orders of his superiors; and undoubtedly was afraid of court-martial prosecution for insubordination had he refused to consent to the search of his car. Having been falsely accused of larceny, he was under the further moral compulsion of attempting to clear himself of that charge, which never was formally filed for lack of evidence. His "consent" was coerced.

*Id.* at 610.

From *Kidd,* Gamble derives that in a military or quasi-military (*e.g.,* a police) situation, a request to a subordinate must *always* be construed as a command. He would have us liken that sort of request to the warrant in *Bumper.* But we decline to accept this invitation to adopt a rule of law that would automatically and inevitably invalidate every consent search made under circumstances like those here present. Nor did the *Kidd* court adopt any such rule of law. Instead, the judge there did just what the circuit court judge did here: he made findings of fact. Merely because Judge Levin reached a conclusion that differed from the one reached by the federal judge does not mean that the former was wrong.

Our duty in a case like this is to make an independent constitutional appraisal of the record in order to resolve any question as to the trial judge's finding of voluntariness. In pursuing that goal, we give great weight to the findings of the judge who ruled on the motion. *In re Anthony F.,* 293 Md. 146, 152, 442 A.2d 975, 979 (1982).

 We have before us a veteran of almost four years of police service, who was no doubt more aware than most civilians of his fourth amendment rights.[4] We have Gamble's own admission of cooperation. We have no force, no threat, no express command, no insistence on an actual or

---

4. Knowledge of the right to refuse to permit a search is not essential to a finding of voluntariness, but is a factor to be weighed. *Schneckloth v. Bustamonte,* 412 U.S. 218, 234 n. 15, 93 S.Ct. 2041, 2051 n. 15, 36 L.Ed.2d 854, 867 n. 15 (1973).

supposed legal right to enter the trunk. We have Sergeant Elliot's testimony, which the court believed. If those in custody can give voluntary consent, *United States v. Arango–Correa*, 851 F.2d 54, 57 (2d Cir.1988), *United States v. Vendrell–Peña*, 700 F.Supp. 1174, 1179–1180 (D. Puerto Rico 1988), or if voluntary consent can be found in circumstances like those in *Anthony F.* or *Loque v. State*, 282 Md. 625, 386 A.2d 780 (1978), it can be found in circumstances like these. At least, "we are unable to say ... the trial court was clearly erroneous in its factual determination" as to consent to search the trunk. *Mosley v. State*, 289 Md. 571, 580, 425 A.2d 1039, 1044 (1981). We turn, therefore, to the problem of the scope of Gamble's voluntary consent to search.

## IV.

Of course, "[a] consensual search may go no further than the limits" defined by the consent. *State v. Jensen*, 44 Wash.App. 485, 723 P.2d 443, 446 (1986). Within these limits, unlocked containers, at least, can be opened, "particularly if the police have indicated they are searching for a small object which might be secured in such a container." 3 W. LaFave, *Search and Seizure* § 8.1(c), p. 161–162 (2d ed. 1987). *See also United States v. Dyer*, 784 F.2d 812 (7th Cir.1986) (consent to search luggage allowed officials to search containers found in luggage); *Morrow v. State*, 757 S.W.2d 484, 491–492 (Tx.Ct.App.1988) (court upheld search of closed items in suitcase where appellant voluntarily consented to search of suitcase).

Put slightly otherwise, "the scope of a warrantless search" based on probable cause is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572, 593 (1982). The scope of a consent search is just as broad. *Schneckloth*, 412 U.S. at 243, 93 S.Ct. at 2056, 36 L.Ed.2d at 872. Here, the circuit court implicitly found that Gamble's consent extended to the blue gym bag and we cannot say

that such a finding was wrong. *See Mosley,* 289 Md. at 580, 425 A.2d at 1044. In any case, it seems apparent that Gamble's voluntary consent to the search of the trunk allowed the police at least to search unlocked containers therein, containers that were capable of concealing the object of the search. The gym bag was such a container.

The Circuit Court for Prince George's County did not err when it denied Gamble's motion to suppress. The Court of Special Appeals did not err when it affirmed that action.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.

ELDRIDGE, Judge, concurring.

I concur in the result in this case, although I do not join the Court's opinion. It is clear to me that the search of the police cruiser trunk and gym bag was valid under the principles set forth in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), and *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). I would not reach the matter of possible consent.