32 A.3d 503

Kenneth THOMAS

v.

STATE of Maryland.

No. 2062, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Dec. 2, 2011.

---

Ben Miller (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

James E. Williams (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

EYLER, DEBORAH S., KEHOE, and IRMA S. RAKER (Retired, specially assigned), JJ.

IRMA S. RAKER (Retired, specially assigned), J.

Kenneth Thomas, appellant, presents a single question for our review: Did the Circuit Court for Montgomery County err by admitting a witness's prior consistent statements into evidence? We shall hold that the testimony in question was admissible pursuant to Maryland Rule 5–802.1, which sets out exceptions to the hearsay rule. Accordingly, we shall affirm.

## I.

Appellant was indicted by the Grand Jury for Montgomery County with one count of distribution of a controlled dangerous substance ("CDS"). He was convicted by a jury in the Circuit Court for Montgomery County, and the court sentenced him to a term of incarceration of five years, with all but eighteen months suspended, and three years of supervised probation.

On December 9, 2009, Richard Benjamin contacted appellant to buy crack cocaine from him. Appellant told Benjamin to meet him at the Blockbuster Video store located in the Nealsville Shopping Center in Germantown, Maryland. Benjamin arrived between 7 p.m. and 8 p.m. that evening; appellant arrived about thirty minutes later, driving a gold Saturn. Benjamin got out of his car, got into the front passenger side of appellant's car, and paid him $50 consisting of two $20 bills and one $10 bill, in exchange for a rock of crack cocaine. With the transaction concluded, both men left the parking lot in their own cars.

Unbeknownst to them, however, Officer Peter Johnson of the Montgomery County Police Department ("MCPD") observed their interaction, though he did not see an exchange because his view was partially obscured by the dashboard of appellant's car. Believing he had witnessed a drug purchase, Officer Johnson radioed other MCPD officers to intercept both men. Two officers, including Jeffrey Rea, stopped Benjamin and began to question him. Officer Johnson arrived on the scene shortly thereafter. Benjamin consented to a search, and the officers discovered a .53 gram rock of crack cocaine in one of his shoes, whereupon he was placed under arrest and charged with possession. Benjamin told the police that he had just purchased the drugs near the local Blockbuster for $50 from a man he knew as "Kenny," who drove a gold Saturn; in court, Benjamin identified appellant as that man.

While the police questioned and searched Benjamin, other police officers stopped appellant shortly after he left the shopping center parking lot. They found $275 in appellant's

possession, including $50 consisting of two $20 bills and one $10 bill, discovered separately from the other money in his left jacket pocket. The police, however, did not find any drugs in appellant's car or on his person.

Benjamin was the first witness called by the State at trial. The State questioned him about his drug charge arising out of the events of the instant case as well as an unrelated unauthorized use of a motor vehicle charge that arose after this drug case. Benjamin stated that he had received probation before judgment ("PBJ") in connection with his drug charge. He testified that within the prior two weeks he had been charged with unauthorized use of a motor vehicle, stemming from an incident in which he borrowed a truck from a friend of his girlfriend. Appellant's counsel, on cross-examination, asked the following:

"Q: Mr. Benjamin—

A: Uh-huh.

Q: —in terms of the vehicle being returned, didn't in fact the police take the vehicle?

A: They came to the house. I, when I—what happened was I was using—

Q: Well—

A: —it for the day because—

Q: Okay.

A: Do you want me to finish or—

Q: No, I ask the questions. I want you to answer my questions.

A: Okay.

Q: —okay? Did you return the vehicle to them, or did the police get the vehicle from you or tell you not to use the vehicle anymore?

A: Actually, yeah, actually, the police came to the door, and then, Yvonne came and picked it up—

Q: Okay.

A: Yvonne and Jerry.

Q: So you didn't actually take it back to her?

A: No, no.

Q: And you didn't call her and tell, tell her that you still had the vehicle?

A: No.

Q: Okay. And, in fact, she spent the better part of that day, prior to calling the police or reporting to the police that the vehicle wasn't returned, she spent the better part of that day trying to get in touch with you ... to find out where the vehicle was."

The cross examination of Benjamin continued, and it became clear that he had kept the vehicle for longer and for purposes other than it had been loaned, and that the car's owner reported it as stolen. Defense counsel continued:

"Q: Were you informed that you had charges against you or potential charges for unauthorized use of a vehicle or failure to return a vehicle?

A: That evening they said I could be charged with something.

Q: Okay. And prior to today's date, you've met with [the prosecutor], correct?

A: I never met with her until this morning.

Q: Did you speak to her?

A: I spoke to her on the phone once to let me know that I was supposed to be here.

Q: Okay. And was that within the last week?

A: That was Friday—

. . . .

Q: Okay. And this past Friday, when you spoke to [the prosecutor] on the phone, you in fact told [her] that you have this matter pending?

A: I told her that there was, there was a situation that happened that could, there could have been something that—just to let her know in case that was a bearing on this case.

Q: And you were hoping that [the prosecutor] might be able to help you out on that?

A: I mean, I knew it wasn't going to go anyhow because it wasn't—it was just a big misunderstanding—

Q: Okay.

A:—and that's exactly what in fact it turned out to be.

Q: But, in fact, you told [the prosecutor] about it prior to your coming here today?

A: I thought I should tell her about it.

Q: That's a yes or a no.

A: That would be a yes.

Q: Okay. And let's talk about the—when you went to court back in January—

A: Uh-huh.

Q:—you had indicated that you got probation, a fine, and some community service.

. . . .

Q: Okay. Did you go to jail or not?

A: I did not.

Q: Okay. And this PBJ that you're talking about—

A: Uh-huh.

Q:—what in effect that is, is that this not going to be on your record at all, correct?

A: I believe so.

Q: Okay. And [the prosecutor], in fact, was the State's attorney who handled that case back in January when you went with the guilty plea?

A: That's true."

Defense counsel again had Benjamin confirm that he spoke to the prosecutor the previous Friday and that he had spoken to the officers who had arrested him about this case. At the end of the cross-examination, defense counsel accused Benjamin of being the seller, not the buyer, of the crack cocaine; Benjamin flatly denied this.

Officer Johnson testified after Benjamin. The State asked the officer about his questioning of Benjamin: and the following colloquy ensued:

"Q: Okay. And at that point in time, was Mr. Benjamin placed under arrest?

A: No. We—I wanted to speak with him further.

Q: Okay. And did you have an opportunity to speak with him?

A: I did. I asked Mr. Benjamin, 'Okay'—

[DEFENSE COUNSEL]: Your Honor, I'm going to object to the hearsay nature of any responses to his questions.

[PROSECUTOR]: Your Honor—

THE COURT: Overruled.

[PROSECUTOR]:—may we approach? Oh.

Q: What did Mr. Benjamin say?

A: I asked Mr. Benjamin, I told him, I was like, 'Look, we know more than you think, this is not just a traffic stop, where did you get this, where did you get this crack cocaine?' and he said, 'I bought it from a guy named Kenny'—

[DEFENSE COUNSEL]: I object again, Your Honor.

THE COURT: Overruled

WITNESS:—'1, I got it from a guy named Kenny at the Blockbuster, who drives a gold Saturn.' "

Officer Rea testified as well. Again, over defense counsel's objections, the State elicited from the officer that Benjamin stated he had purchased the crack cocaine "from a black guy at a nearby shopping center"; "a man he knew as Kenny that was in a gold Saturn at Blockbuster"; and "that [Benjamin] paid for the crack cocaine with $50," consisting of two $20 bills and one $10 bill.

Appellant did not call any witnesses. At the close of the trial, defense counsel devoted virtually her entire argument to attacking Benjamin's credibility. She pointed out to the jury that Benjamin received no jail time for his possession charge and that he had spoken to the prosecutor about his pending unauthorized use of a vehicle charge. She offered the defense's theory that Benjamin was the seller and that appellant

went to the shopping center to purchase $50 of crack cocaine but changed his mind at the last moment.

The jury found appellant guilty, the court imposed sentence, and this timely appeal followed.

## II.

Before this Court, appellant argues that the prior consistent statements of Benjamin, offered through the officers' testimony, were inadmissible hearsay evidence, which in his view do not fall within any exception to the rule against hearsay. Although appellant acknowledges that Md. Rule 5–802.1(b) might permit the statements to be admitted, he asserts that Benjamin's motive to fabricate testimony arose as soon as the police stopped him and found crack cocaine in his possession. Since this motive arose *before* all of the statements in question occurred, appellant continues, the statements are not admissible under the Rule.

The State asserts that these statements were admissible under Rule 5–802.1(b) to rebut the inference, raised by appellant in cross-examination of Benjamin and in closing argument, that Benjamin testified falsely in the hope that he would receive consideration from the State in its prosecution of him for unauthorized use of a motor vehicle. As Benjamin was charged with this crime *after* he made the statements repeated by the officers, according to the State, his alleged motivation to inculpate appellant falsely could only have arisen after these statements, and, thus, the statements were admissible under Rule 5–802.1(b).

## III.

Admissibility of prior consistent statements in Maryland is controlled by Maryland Rules of Evidence 5–802.1 and 5–616. Rule 5–802.1, based on Federal Rule of Evidence 801, addresses prior statements by witnesses and sets out exceptions to the hearsay rule. The Rule provides, in pertinent part, as follows:

"The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:

> (b) A statement that is consistent with the declarant's testimony, if the statement is offered to rebut an express or implied charge against the declarant of fabrication, or improper influence or motive[.]"

Md. Rule 5–802.1(b). Prior consistent statements admitted into evidence under Rule 5–802.1(b) may be admissible as substantive evidence.

 Rule 5–616(c)(2), Impeachment and Rehabilitation, provides for the admission of prior consistent statements to rehabilitate a witness, providing in pertinent part, as follows:

"(c) A witness whose credibility has been attacked may be rehabilitated by:

> (2) Except as provided by statute, evidence of the witness's prior statements that are consistent with the witness's present testimony, when their having been made detracts from the impeachment[.]"

Prior consistent statements admitted into evidence under Rule 5–616(c) are not admissible as substantive evidence but instead are admitted to rehabilitate the witness's credibility. Prior consistent statements are offered often for one of three purposes: to rehabilitate a witness who has been impeached, to corroborate evidence, or as substantive evidence. The general rule in most jurisdictions is that prior consistent statements are not admissible in evidence, with certain exceptions, because when offered merely as corroborative evidence, they are excluded on relevancy grounds and also on the need to avoid unnecessary repetition of cumulative evidence, as well as the need to prevent fabrication of evidence. If statements are offered for the truth of the matter asserted in the statements, *i.e.*, for substantive purposes, then the statements are hearsay and are inadmissible ordinarily unless they fit within an exception to the hearsay rule. However, when they are offered to corroborate in-court testimony and to rehabilitate a

witness who has been impeached, prior consistent statements are not hearsay and may be admissible.

Although the text of Rule 5–802.1(b) does not condition the admissibility of a prior consistent statement on its having been made before an alleged motive to fabricate arises, the Court of Appeals in *Holmes v. State*, 350 Md. 412, 712 A.2d 554 (1998), held that the Rule does include this temporal element. At common law, the premotive requirement for admitting prior consistent statements was based upon the rationale that such statements have no relevancy to refute a charge of bias or motive to testify falsely unless the statements were made before the bias or motive arose. *Id.* at 417, 712 A.2d 554. In *Tome v. United States*, 513 U.S. 150, 152, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995), the United States Supreme Court held that Federal Rule of Evidence 801(d)(1)(B) incorporated the common-law temporal element, even though the federal rule's language—allowing admission of a prior consistent statement "to rebut a charge of a recent fabrication or improper influence or motive"—did not so require. The Court of Appeals found evidence in the commentary of the Maryland Rules Committee suggesting that Rule 5–802.1(b), which was based on Federal Rule 801(d)(1)(B), meant to incorporate the long-standing temporal condition, and held that "in order to be admissible under Md. Rule 5–802.1(b), a prior consistent statement must have been made before the alleged fabrication or improper influence or motive arose." *Holmes*, 350 Md. at 424, 712 A.2d 554.

In the instant case, there is no dispute that the statements that the State elicited were prior consistent statements. Appellant objected to the evidence, without stating a foundation for the objection,[1] and the trial court did not ask the State the basis for the admissibility of the statements. The court overruled the objection, without discussion, and admitted the evidence. We have little doubt that the court

---

1. "The State is not required to assert the purpose for which it is seeking admission of a prior consistent statement unless asked by the court." *Holmes v. State*, 350 Md. 412, 429, 712 A.2d 554 (1998).

understood that the prior consistent statement exception applied. In *Ball v. State,* 347 Md. 156, 206, 699 A.2d 1170 (1997), the Court of Appeals, addressing the trial court's use of victim impact evidence, noted as follows:

> "Trial judges are presumed to know the law and to apply it properly. Regardless of the prosecution's representation of the purpose of victim impact evidence, therefore, the court is presumed to have made proper use of the victim impact evidence."

Benjamin's statements, offered in evidence through the police officers, that Benjamin bought the drugs from appellant, was admissible under Rule 5–802.1(b). They were statements made by a witness subject to cross-examination, consistent with the witness's in-court testimony, offered to rebut express or implied charges of fabrication, improper influence or motive.

The wrinkle in this case, and the heart of appellant's argument on appeal, is that the witness allegedly had a motive to fabricate at the time he made the statements in question.[2] Appellant's argument here is that Benjamin would have had the motive to lie to police as soon as police discovered cocaine on his person, in order to avoid the stiffer penalties for *distribution* of a CDS as opposed to simple possession of a CDS. *Compare* Md.Code (2002, 2011 Cum.Supp.), § 5–601(c)(1) of the Criminal Law Article (maximum term of incarceration for four years for possession of a CDS), *with id.* § 5–608(a) (maximum term of incarceration for twenty years for distribution or possession with intent to distribute cocaine base). The State focuses its argument on the fact that, at trial, defense counsel questioned Benjamin about his charge of unauthorized use of a motor vehicle and implied, during cross-examination and again in closing argument, that Benjamin was

---

**2.** Although defense counsel argued to the jury that Benjamin was the seller and appellant was the buyer, who decided not to go through with the purchase at the last minute, she did not make the argument to the judge that the evidence should not be admitted on that basis; additionally, there was no evidence offered to support this theory at trial.

receiving a benefit from the State on that charge in exchange for his favorable testimony against appellant.

■ The question then arises: What is the outcome under Rule 5–802.1(b) if a witness's statement is admissible under the Rule because he did not have a motive to fabricate under one scenario, but he did have a motive to fabricate under a second scenario? We hold that a witness's prior consistent statement is admissible if made prior to the existence of any one of multiple biases or motives that an opposing party charges, expressly or impliedly, might have influenced the witness's testimony.

In *People v. Hayes*, 52 Cal.3d 577, 276 Cal.Rptr. 874, 802 P.2d 376 (1990), the Supreme Court of California considered a situation similar to the one presented in this case. In *Hayes*, the defendant impeached a prosecution witness with the fact that he had criminal charges pending against him, and implied that the witness was testifying in a manner favorable to the prosecution to obtain a lenient disposition on those charges. *Id.*, 276 Cal.Rptr. 874, 802 P.2d at 394. The prosecution sought to introduce the witness's prior consistent statement, arguing that the criminal charges had not been brought at the time the witness made the statement. *Id.* The defendant responded that the witness still had a motive to lie when he made the prior consistent statement because he was on probation and was a suspect in the investigation of the crimes for which the defendant was on trial. *Id.*, 276 Cal.Rptr. 874, 802 P.2d at 395. The trial court admitted the prior consistent statement, and on appeal, the California Supreme Court affirmed.

California's statute governing the admission of prior consistent statements provides in relevant part as follows:

"Evidence of a statement previously made by a witness that is consistent with his testimony at the hearing is inadmissible to support his credibility unless it is offered after:

(b) An express or implied charge has been made that his testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the

statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen." Cal. Evid.Code § 791(b) (West 2011). Based upon this language, the court held that a prior consistent statement, otherwise meeting the statutory requirements, "is admissible if it was made before the existence of any one or more of the biases or motives that, according to the opposing party's express or implied charge, may have influenced the witness's testimony." *Hayes*, 276 Cal.Rptr. 874, 802 P.2d at 395; *see also State v. Middleton*, 294 Or. 427, 657 P.2d 1215, 1217 (1983); Debra T. Landis, Annotation, *Admissibility of Impeached Witness' Prior Consistent Statement—Modern State Criminal Cases*, 58 A.L.R.4th 1014, § 2a (2011). The Maryland Rule and the California Code are worded similarly. Neither rule requires that a prior consistent statement precede *all* alleged motives to fabricate.

■ Benjamin's prior consistent statements were admissible also under Rule 5–616(c) as rehabilitative evidence. The Court of Appeals in *Holmes* held that, although the statement in that case was not admissible under Rule 5–802.1(b) because it was not offered to rebut a motive to fabricate testimony, it was admissible under Rule 5–616(c), which does *not* have a temporal requirement, because the statement rehabilitated the witness's credibility and lent credence to his in-court testimony. *See* 350 Md. at 427–30, 712 A.2d 554. The Court explained as follows:

"Under Md. Rule 5–616(c)(2), a prior consistent statement is admissible to rehabilitate a witness as long as the fact that the witness has made a consistent statement detracts from the impeachment. Prior consistent statements used for rehabilitation of a witness whose credibility is attacked are relevant not for their truth since they are repetition of the witness's under which they are made rebut an attack on the witness's credibility. Thus, such statements by definition are not offered as hearsay and logically do not have to meet the same requirements as hearsay statements falling within an exception to the hearsay rule, e.g., Md. Rule 5–802.1(b). *We therefore conclude that a relevant consistent statement*

*admitted solely for the purpose of rehabilitation is not required to meet the stringent premotive requirement of Md. Rule 5–802.1(b)."*

*Id.* at 427, 712 A.2d 554 (emphasis added).

At a minimum, if appellant wished to limit the use of the prior consistent statements to rehabilitative purposes rather than as substantive evidence, appellant needed to raise the issue with the court and request a limiting instruction. He did not do so. In *McCray v. State*, 122 Md.App. 598, 609, 716 A.2d 302 (1998), Judge Sonner, writing for this Court, discussed the obligations placed upon the defendant when prior consistent statements are offered into evidence:

> "Because *Holmes* does not require the State to articulate whether it is seeking to admit the prior consistent statement for substantive or rehabilitative purposes, it places two burdens on the defendant. First, it is incumbent on the defendant to inquire about the basis upon which the State intends to introduce the prior consistent statement. Second, the defendant must request a jury instruction limiting the use of the prior consistent statement for rehabilitative purposes only."

In the case at bar, the State sought to introduce statements of Benjamin that were prior consistent statements. The evidence was admissible as an exception to the hearsay rule and alternatively as rehabilitative evidence. The trial judge did not abuse his discretion in admitting the statements.

***JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.***