55 A.3d 10

**Kenneth THOMAS**

v.

**STATE of Maryland.**

**No. 127, Sept. Term, 2011.**

Court of Appeals of Maryland.

Oct. 22, 2012.

88

Ben Miller, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

James E. Williams, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

GREENE, J.

This case involves two legal questions: (1) whether prior consistent statements are admissible under Maryland Rule 5–802.1(b) if the declarant had multiple reasons to fabricate the statements and the statements predated at least one of the declarant's motives to fabricate; and, (2) whether statements relied upon at trial as substantive evidence, nonetheless, are admissible under Maryland Rule 5–616(c) to rehabilitate a witness. We shall hold that the prior consistent statements, elicited through the testimony of police officers in this case, were not admissible under Rule 5–802.1(b) because they were made after the declarant had *an* expressed or implied motive to fabricate the statements, and the alleged motives were presented as such at trial before the trial judge made a determination as to the statements' admissibility. In addition, we shall hold that the prior consistent statements were inadmissible hearsay and were neither relevant nor admissible under Rule 5–616(c) to "detract from the impeachment," or "rebut logically" the impeachment undertaken.

## I.

In the Circuit Court for Montgomery County, a jury convicted Petitioner, Kenneth Thomas, of distribution of a controlled dangerous substance. The trial judge sentenced Petitioner to five years incarceration, suspending all but eighteen months. On appeal, the Court of Special Appeals affirmed that judgment. The intermediate appellate court reasoned that a witness's prior consistent statements are admissible even if the witness had multiple motives to fabricate, so long as the witness made the statements before any one of the motives to fabricate. Alternatively, the court held that the witness's prior consistent statements were admissible as rehabilitative evidence under Rule 5–616(c). *Thomas v. State*, 202 Md.App. 386, 398–99, 32 A.3d 503, 509–10 (2011). We granted

*certiorari, Thomas v. State,* 425 Md. 227, 40 A.3d 39 (2012), to answer the following questions:

1. Did the Court of Special Appeals incorrectly interpret Maryland Rule 5–802.1(b) when it held that if a declarant had multiple motives to fabricate, the declarant's prior consistent statement was admissible at trial under Rule 5–802.1(b) so long as it predated at least one of the declarant's motives?

2. Applying this incorrect interpretation of Rule 5–802.1(b), did the Court of Special Appeals then err when it ruled admissible prior consistent statements by a declarant that came after the declarant had a motive to fabricate?

3. Did the Court of Special Appeals incorrectly rule that the declarant's prior consistent statements were admissible at trial pursuant to Maryland Rule 5–616(c)?

## II.

On December 9, 2009, Officer Peter Johnson, of the Montgomery County Police Department, parked his unmarked vehicle on the lot of the Milestone Shopping Center located in Germantown, Maryland. Officer Johnson set up surveillance at that location to observe activities occurring on the parking lot near the Blockbuster Video store. As he watched, a white Cadillac Eldorado driven by Richard Benjamin drove onto the lot, followed approximately thirty minutes later by a gold Saturn automobile driven by Petitioner. Benjamin got out of the Cadillac and approached the passenger side of the Saturn. Officer Johnson noticed the interaction between the two drivers, which he described as "an exchange," when Benjamin reached inside the vehicle driven by Petitioner. From this interaction, Officer Johnson surmised that Benjamin and Petitioner had just engaged in a drug transaction. Although he did not actually witness any "exchange [of drugs or money] because his view was partially obscured by the dashboard of [Petitioner's] car[,]" Officer Johnson did see Benjamin reach inside the passenger compartment of Petitioner's car. There-

after, Benjamin and Petitioner drove away from the parking lot in their respective cars, and Officer Johnson radioed for backup to stop the two vehicles.

Officers Alfred Dzenkowski, Jeffrey Rea and Johnson were involved in conducting the stop of Benjamin. After stopping Benjamin's car, two of the officers questioned Benjamin about where he was coming from and where he was going. In Benjamin's words, "They said [the stop] was for traffic although there w[ere] three cops behind me . . . I knew something was wrong." According to Officer Johnson, "[i]n speaking with Mr. Benjamin, he had said that—his initial story was that he was just going shopping and somebody had asked him directions." Benjamin also stated that he went to the Giant and Blockbuster stores before leaving the shopping center parking lot. While the officers questioned Benjamin outside of his car, he consented to a search of his car and his person. In conducting the search, the officers directed Benjamin to remove his shoes. According to Officer Johnson, after removing his shoes, "[Mr. Benjamin] kicked his shoes into a wooded area behind" him. Officer Dzenkowski retrieved the shoes and found located inside the left shoe a white rock that later tested positive for crack cocaine. When asked where he had gotten the crack cocaine, Benjamin responded, "I bought it from a guy named Kenny"—"I, I got it from a guy named Kenny at the Blockbuster, who drives a gold Saturn." According to Benjamin, he paid for the drugs with two twenty-dollar bills and one ten-dollar bill. The police recovered no other drug paraphernalia from Benjamin or from inside his car.

Officer Jason Cokinos was involved in the traffic stop of the Saturn driven by Petitioner. In response to questioning, Petitioner told the officer that he was coming from Frederick and was on his way to Pep Boys. A search of Petitioner revealed that he was in possession of $275, fifty of which was in his left jacket pocket separated from the rest of his money. The fifty dollars consisted of two twenty-dollar bills and one ten-dollar bill. Officer Cokinos did not recover any drugs from Petitioner or from inside the Saturn.

At trial, the State called Benjamin to testify. According to Benjamin, he met Petitioner as planned at the Blockbuster store and purchased drugs. He testified that he paid for the drugs using two twenty-dollar bills and one ten-dollar bill. On direct examination, the State brought out that it made no promises to Benjamin in exchange for his testimony in this case; that Benjamin received a probation before judgment on the charge of possession of cocaine; and that two weeks prior to trial in this case, Benjamin was charged with unauthorized use of a motor vehicle. As to the unauthorized use charge, Benjamin attempted to explain that the charge stemmed from a misunderstanding when he borrowed a car from a friend.

The defense counsel's theory of the case was that Benjamin was the one selling drugs on December 9, 2009, and Petitioner went to Blockbuster intending to purchase drugs. At the last minute, however, Petitioner decided not to make the purchase and left the parking lot. During trial, the defense emphasized that no drugs were found on Petitioner or in his vehicle.

On cross-examination of Benjamin, defense counsel inquired about the details of the unauthorized use charge. Counsel asked if Benjamin actually returned the vehicle or if the owner came to get it after the police got involved. Benjamin said that he did not return the vehicle and that the owner came and got it. In addition, defense counsel asked Benjamin if he told the prosecutor about the unauthorized use charge before he testified in the present case, and Benjamin said he had. Further, defense counsel asked Benjamin if he went to the Blockbuster on December 9 to sell drugs; and whether Petitioner was the buyer but changed his mind at the last minute. Benjamin denied that he went to the Blockbuster to sell drugs.

The State called Officer Johnson who testified that Benjamin told him that he bought drugs from Kenny. The State also called Officer Jeffrey Rea to testify that Benjamin told him that he purchased the drugs from "a black guy at a nearby shopping center." During the direct examination of Officer Johnson, the following occurred:

Q. Okay. And did you have an opportunity to speak with [Benjamin]?

A. I did. I asked Mr. Benjamin, "Okay"—

[DEFENSE COUNSEL]: Your Honor, I'm going to object to the **hearsay nature** of any responses to his questions. [Emphasis added].

[THE PROSECUTOR]: Your Honor—

THE COURT: Overruled.

[THE PROSECUTOR]:—may we approach? Oh.

By [the prosecutor]:

Q. What did Mr. Benjamin say?

A. I asked Mr. Benjamin, I told him, I was like, "Look, we know more than you think, this is not just a traffic stop, where did you get this, where did you get this crack cocaine?" and he said, "I bought it from a guy named Kenny"—

[DEFENSE COUNSEL]: I object again, Your Honor.

THE COURT: Overruled

THE WITNESS:—"I, I got it from a guy named Kenny at the Blockbuster, who drives a gold Saturn."

The direct examination of Officer Jeffrey Rea reveals the following:

Q. Okay, thank you very much. Now, did you have an opportunity to speak at all with Mr. Benjamin after the crack cocaine was seized?

A. Yeah. After I came out of the car and Officer Dzenkowski had the, had the crack, I asked Mr. Benjamin where he got it from, and he said he—

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

THE WITNESS:—he said he bought it from a black guy at a nearby shopping center.

The State recalled Officer Johnson and the following occurred:

Q. Officer Johnson, when you were speaking with Mr. Benjamin, did he tell you how he paid for the rock of crack cocaine?

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Overruled.

THE WITNESS: He did. On the scene initially, after we had him out, we found—Officer Dzenkowski found the rock of crack cocaine; I asked him, "Okay, you know, let's, let's talk," and he said that he bought the, the crack from a man he knew as Kenny that was in a gold Saturn at the Blockbuster.

\* \* \*

THE WITNESS: Okay. He told me that he paid for the crack cocaine with $50.

BY [THE PROSECUTOR]:

Q. Did he tell you the denomination that he used?

A. He did later—

[DEFENSE COUNSEL]: Objection.

THE WITNESS:—at the—

THE COURT: Overruled.

THE WITNESS: Okay. He did later at—at the Germantown Station, I advised him of his rights. Mr. Benjamin—

[DEFENSE COUNSEL]: Objection. Again, Your Honor, that is not responsive to the question.

THE COURT: All right. Just tell us if, at any time, he advised you as to the denominations with which he paid for the crack cocaine.

THE WITNESS: He did. He told me there was two 20s and a 10 to make $50, that's what he paid for the crack cocaine that was found in his shoe.

### III.

Generally, in order for evidence to be admissible, it must be relevant. *Andrews v. State,* 372 Md. 1, 19, 811 A.2d 282, 292 (2002); *see* Md. Rule 5–402. Pursuant to Md. Rule 5–

401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See Snyder v. State*, 361 Md. 580, 590–91, 762 A.2d 125, 131 (2000). The question of admissibility of evidence is to be determined by the trial judge under Md. Rule 5–104(a), taking into consideration Md. Rules 5–401 through 5–403. *See Smith v. State*, 371 Md. 496, 504, 810 A.2d 449, 454 (2002) (summarizing the rules to the extent that "evidence that is not relevant to a material issue is inadmissible," and that evidence "even if relevant, [ ] may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury") (citations omitted); *Merzbacher v. State*, 346 Md. 391, 404, 697 A.2d 432, 439 (1997) (stating that "the admission of evidence is committed to the considerable and sound discretion of the trial court") (citations omitted); *Nance v. State*, 331 Md. 549, 558 n. 3, 629 A.2d 633, 638 n. 3 (1993) (noting that questions of admissibility are for the court to determine, "including whether evidence is admissible generally and substantively or only for a limited purpose such as impeachment . . . .") (citations omitted); Lynn McLain, *Md. Rules of Evidence* 206 (2d ed.2002) (highlighting that admissibility is determined by the trial judge, upon consultation of Rules 5–401 through 5–403).

■ "Generally, statements made out of court that are offered for their truth are inadmissible as hearsay, absent circumstances bringing the statements within a recognized exception to the hearsay rule." *Su v. Weaver*, 313 Md. 370, 376, 545 A.2d 692, 694 (1988) (citing *Kapiloff v. Locke*, 276 Md. 466, 471, 348 A.2d 697, 699 (1975)). Maryland Rule 5–802 provides generally that hearsay is inadmissible. It follows that prior out-of-court statements by a witness that are consistent with the witness's trial testimony, generally, are not admissible to bolster the credibility of the witness. *Holmes v. State*, 350 Md. 412, 416–17, 712 A.2d 554, 556 (1998). There are exceptions to the general rules. Provided certain prerequisites are satisfied, under Md. Rule 5–802.1(b), a witness's

prior consistent statements are admissible as substantive evidence. *See City Pass. Ry. Co. v. Knee*, 83 Md. 77, 79, 34 A. 252, 253 (1896) (noting that where a witness has been impeached by a charge that he has testified under corrupt motives, the witness's prior consistent statements have no relevancy to refute the charge unless the consistent statements were made before the source of the bias, interest, influence, or incapacity originated).

■ Under Md. Rule 5–616(c)(2), a witness's prior consistent statements are admissible, not as substantive evidence, but for nonhearsay purposes to rehabilitate the witness's credibility. *See Holmes*, 350 Md. at 416–17, 712 A.2d at 556. In *Anderson v. State*, we noted that prior consistent statements may be admitted as an exception to hearsay under Md. Rule 5–802.1(b), "to rebut an express or implied charge against the [witness] of fabrication, or improper influence or motive; and/or [ ] under Md. Rule 5–616(c)(2), if the statement having been made detracts from the impeachment[.]" We also pointed out that "[t]hese rules, however, become applicable only if the defendant's opening statement and/or cross examination of a State's witness has 'opened the door' to evidence that is relevant (and now admissible) for the purpose of . . . rehabilitation." 420 Md. 554, 566–67, 24 A.3d 692, 699 (2011) (citations, quotations and emphasis omitted).

Our cases point out that, on review, we will not disturb the trial court's evidentiary rulings absent error or a clear abuse of discretion. *Conyers v. State*, 354 Md. 132, 176, 729 A.2d 910, 933 (1999). Recently, in *Parker v. State*, 408 Md. 428, 436, 970 A.2d 320, 325 (2009), we summarized our standard of review, generally, with regard to admissibility of evidence and hearsay rulings. We said:

Maryland Rule 5–802 states that "[e]xcept as otherwise provided by these rules or permitted by applicable constitutional provisions or statutes, hearsay is not admissible." We discussed the standard of review for hearsay rulings in *Bernadyn v. State*, 390 Md. 1, 7–8, 887 A.2d 602, 606 (2005):

We review rulings on the admissibility of evidence ordinarily on an abuse of discretion standard. Review of the admissibility of evidence which is hearsay is different. Hearsay, under our rules, *must* be excluded as evidence at trial, unless it falls within an exception to the hearsay rule excluding such evidence or is "permitted by applicable constitutional provisions or statutes." Md. Rule 5–802. Thus, a circuit court has no discretion to admit hearsay in the absence of a provision providing for its admissibility. Whether evidence is hearsay is an issue of law. . . . (Emphasis in original).

Although the parties in this case dispute the correct standard of review, as Petitioner suggests, it is clear from our case law that in deciding whether a hearsay exception is applicable, we review the trial judge's ruling for legal error rather than for abuse of discretion; that is because hearsay is never admissible on the basis of the trial judge's exercise of discretion. *See Dulyx v. State,* 425 Md. 273, 285, 40 A.3d 416, 424 (2012). Thus, if the prior consistent statements admitted into evidence in this case were hearsay, and do not satisfy the requirements of Rule 5–802.1(b) as an exception, the statements should not have been admitted as substantive evidence. *Holmes v. State,* 350 Md. at 424, 712 A.2d at 559. Similarly, if prior consistent statements offered for rehabilitative purposes do not detract from the impeachment of a witness or rebut logically the impeachment undertaken, the statements are inadmissible under Rule 5–616(c)(2) and their admission may be reversible error. *See Holmes,* 350 Md. at 427, 712 A.2d at 561 (noting that "[p]rior consistent statements used for rehabilitation of a witness whose credibility is attacked are relevant not for their truth . . . [but rather] [t]hey are relevant because the circumstances under which they are made rebut an attack on the witness's credibility").

## IV.

Petitioner challenges the admission into evidence at trial, through the testimony of two police officers, the prior consis-

tent statements of Richard Benjamin, who participated in the alleged drug transaction along with the defendant, Kenneth Thomas. According to Petitioner, "[t]he moment police stopped Benjamin, Benjamin had a motive to fabricate any subsequent statement he made to police about the drug transaction." Petitioner maintains that "Benjamin's motive to fabricate—to diminish his role in the drug transaction to that of a buyer, not a seller—never went away." Therefore, according to Petitioner, "[i]t should be immaterial that he later also developed a second motive to fabricate—when he faced charges for unauthorized use of a motor vehicle." In summary, according to Petitioner, "Benjamin had a motive to fabricate when first questioned by police and that motive was not any less applicable simply because he later formed a second motive to fabricate." Thus, Petitioner concludes that Benjamin's prior consistent statements to the arresting police officers concerning Thomas's drug distribution should have been admitted only if they were made before the declarant had any motive to fabricate.

Respondent disagrees. According to Respondent, "Benjamin's prior consistent statements . . . were properly admitted as either substantive evidence or rehabilitative evidence under the applicable Maryland Rules." Respondent asserts that the trial judge admitted Benjamin's prior consistent statements because Thomas's attorney tried to impeach Benjamin's credibility. As to the unauthorized use charge, Respondent posits that Benjamin's "prior consistent statements rebutted defense counsel's charge that Benjamin's testimony resulted from fabrication or improper influence or motive," because the alleged motive to fabricate arose after Benjamin spoke to the police about Petitioner's involvement in the drug transaction. Furthermore, Respondent maintains that "to the extent that defense counsel [alleged] that Benjamin had several motives to fabricate before and after his prior consistent statements, these statements were still properly admitted as substantive evidence" because defense counsel specifically alleged that Benjamin was motivated to fabricate his testimony in light of the pending unauthorized use of a motor vehicle charge.

Respondent points out that, at trial, "when [defense] counsel objected to the State's request to introduce Benjamin's prior consistent statements, Thomas never alleged the existence of an additional motive to fabricate at the time of Benjamin's arrest." In addition, Respondent asserts that it was not until defense counsel's closing argument that he mentioned that "Benjamin may have had a motive to fabricate at the time of his arrest." Thus, Respondent concludes, by pointing out that, even though the Court of Special Appeals acknowledged that Benjamin had multiple motives to fabricate, that court "rejected Thomas's claim that all motives to fabricate must arise after a prior consistent statement for the statement to be admissible[.]" According to Respondent, in rejecting that premise, the intermediate appellate court held correctly that "a witness's prior consistent statement is admissible if made prior to the existence of any one of multiple biases or motives that an opposing party charges, expressly or impliedly, might have influenced the witness's testimony." *Thomas,* 202 Md. App. at 398, 32 A.3d at 509.

A more accurate characterization of Petitioner's argument to the jury, however, was that Benjamin's and Thomas's roles in the drug transaction were reversed; Benjamin was the seller and Petitioner was the buyer. Thus, Petitioner maintains that Benjamin is not a credible witness because he had a motive to lie to the police from the moment the police discovered crack cocaine on his person. Further, Petitioner asserts that Benjamin's character is such that he will say anything to make himself look better. According to defense counsel, when Benjamin was stopped by the police and they asked what was going on, he lied. Also, defense counsel pointed out that, when Benjamin testified in court, he lied and that he will lie whenever "it's going to elevate him in the eyes of whoever is asking the questions."

On the basis of the record before us, we know that when the State sought to introduce Benjamin's prior statements, through the testimony of the police officers involved, defense counsel objected on the grounds of hearsay. The trial judge overruled the objections. There was no discussion with the

trial judge about why the prosecutor believed that Benjamin's statements to the police were not hearsay or why the defense counsel believed the statements were hearsay. The trial judge made no finding as to when, or if, Benjamin formed any motive to lie; nor was any comment made to dispel the notion that Benjamin's prior statements were offered to rebut defense counsel's attack on Benjamin's trial testimony. *See Holmes*, 350 Md. at 420, 712 A.2d at 557 (recognizing that "prior consistent statement[s] may not be admitted to counter all forms of impeachment or to bolster the witness merely because [he or] she has been discredited") (citations and quotations omitted).

## V.

■ Generally, prior out-of-court statements by a witness that are consistent with the witness's trial testimony are not admissible to bolster the witness's credibility. *Holmes*, 350 Md. at 416–17, 712 A.2d at 556. There are exceptions to this rule.

Maryland Rule 5–802.1 provides in relevant part:

The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:

\*      \*      \*

(b) A statement that is consistent with the declarant's testimony, if the statement is offered to rebut an express or implied charge against the declarant of fabrication, or improper influence or motive[.]

■ In *Holmes*, 350 Md. at 422, 712 A.2d at 558, we explained that Md. Rule 5–802.1(b) retains the common law "premotive" requirement. In other words, as a prerequisite to admissibility, a prior statement must predate the alleged motive to fabricate. Under the common law, if a witness is attacked by a charge of fabrication or improper influence or motive, the prior consistent statement is relevant only if it was

made before the source of the fabrication or improper influence or motive originated. We pointed out that

> [t]he rationale behind the common-law, "premotive" rule was that if a witness has been attacked by a charge of "bias, interest, corrupt influence, contrivance to falsify, or want of capacity to observe or remember, the applicable principle is that the prior consistent statement has no relevancy to refute the charge unless the consistent statement was made *before* the source of the bias, interest, influence or incapacity originated." (Emphasis in original).

*Holmes,* 350 Md. at 417, 712 A.2d at 556 (quoting 1 *McCormick on Evidence* § 47, at 177 (John W. Strong ed., 4th ed.1992)).

Further acknowledging that Md. Rule 5–802.1(b) is derived from Federal Rule of Evidence 801(d)(1)(B), we adopted the United States Supreme Court's interpretation of Rule 801(d)(1)(B) that the rule "embodies the common-law rule requiring a prior consistent statement, introduced to rebut a charge of ... fabrication or improper influence or motive to have been made before the alleged fabrication or improper influence or motive came into existence." *Holmes,* 350 Md. at 418, 422, 712 A.2d at 557–58 (quotations omitted); *See Tome v. United States,* 513 U.S. 150, 152, 115 S.Ct. 696, 705, 130 L.Ed.2d 574, 588 (1995). In expressly adopting the premotive rule we also adopted the rationale that, " '[a] consistent statement that predates the motive is a square rebuttal of the charge that the testimony was contrived as a consequence of that motive. By contrast, prior consistent statements carry little rebuttal force when most other types of impeachment are involved.' " *Holmes,* 350 Md. at 419, 712 A.2d at 557 (quoting *Tome,* 513 U.S. at 158, 115 S.Ct. at 701, 130 L.Ed.2d at 582–83). Thus, consistent with the reasoning of the *Tome* Court, we adopted the conclusion that under Md. Rule 5–802.1(b) "a prior consistent statement 'may not be admitted to counter all forms of impeachment or to bolster the witness merely because [he or] she has been discredited.' " *Holmes,* 350 Md. at 420, 422, 712 A.2d at 557, 558 (quoting *Tome,* 513 U.S. at 157, 115 S.Ct. at 701, 130 L.Ed.2d at 582).

Further, in reviewing Rule 5–802.1(b), we emphasized that the history of this rule indicates that "it was intended to permit the admission of those prior consistent statements which would logically rebut the impeachment undertaken, whether by an implied or express charge of fabrication or of bias or improper motive." *Holmes,* 350 Md. at 423, 712 A.2d at 559 (citations, quotations and emphasis omitted). "[A]cknowledg[ing] the possibility that there may be rebuttal value in a consistent statement made sometime after a motive arose but before it became strong," we concluded as did the *Tome* Court that "such a statement rebuts the 'charged fabrication in a less direct and forceful way.' " Therefore, we held that, "in order to be admissible under Md. Rule 5–802.1(b), a prior consistent statement must have been made before the alleged fabrication or improper influence or motive arose." *Holmes,* 350 Md. at 424, 712 A.2d at 559 (citing *Tome,* 513 U.S. at 158, 115 S.Ct. at 701, 130 L.Ed.2d at 583).

The timing of the alleged fabrication is crucial to the application of Md. Rule 5–802.1(b). Therefore, consistent with *Tome,* we now adopt expressly the "view, which appears to be more in line with the clarity of *Tome's* approach, ... that when the witness is obviously under investigation or has been arrested when the statements were made, [the witness's prior statements] are generally inadmissible because the motive to fabricate has already arisen."[1] *See* 2 *McCormick on Evidence* § 251, at 152 (Kenneth S. Brown ed., 6th ed.2006) (citing *United States v. Moreno,* 94 F.3d 1453, 1455 (10th Cir.1996) (holding that a testifying co-conspirator "had an incentive to concoct a story implicating the [defendant] as soon as he was arrested[,]" therefore, under *Tome* it was error to admit the witness's statement); *United States v. Forrester,* 60 F.3d 52, 64 (2d Cir.1995) (holding that the testifying co-participant's "motive to fabricate arose as soon as she was

---

1. We note that the alleged pre-statement motive to fabricate must have been "raised in the case," *e.g.* expressly or impliedly, but before the trial judge's determination as to the admissibility of the prior consistent statement.

arrested and that, therefore, her statement was inadmissible hearsay")); *see also United States v. Trujillo,* 376 F.3d 593, 610, 611 (6th Cir.2004) (holding that the witnesses' prior consistent statements were made after they formed their motive to lie, noting that "[i]t is simply not believable to suggest that, a day or two after [the witnesses] were stopped with more than fifty kilograms of marijuana in their car and were subsequently arrested, they did not have a motive to lie, regarding the source of the marijuana, in order to get lenient treatment") (also recognizing that the trial judge, in resolving the hearsay objection, never discussed *Tome* in deciding to overrule the hearsay objection, and never rendered a factual finding as to when the witnesses formed a motive to lie); *Blair v. State,* 130 Md.App. 571, 601, 747 A.2d 702, 718 (2000) (acknowledging that the witness, a co-defendant, had a motive to fabricate at the moment the crime was committed, if not earlier); *McCray v. State,* 122 Md.App. 598, 609–10, 716 A.2d 302, 308 (1998) (recognizing that the witness's motive to fabricate existed from the moment that the crime, [in which she participated,] took place); *Cole v. State,* 83 Md.App. 279, 300, 574 A.2d 326, 336 (1990) (affirming that "[t]he capacity of the complaint logically to rebut the impeachment depends only upon the fact that it was made *before* the impeaching event … occurred") (emphasis in original); *People v. Heard,* 187 Ill.2d 36, 240 Ill.Dec. 577, 718 N.E.2d 58, 77 (1999) (holding that the witness's prior consistent statements were inadmissible because the witness's motive to fabricate alibi testimony existed at the time of the crime); *State v. Fitch,* 600 A.2d 826, 829 (Me.1991) (holding that the witness "had a motive to fabricate at least at the time of her arrest and may have had a motive to lie at the moment she drove away from the scene of the crime").

■ As these cases make clear, the trial court's focus should be on when the prior consistent statements arose. If the prior consistent statements were made at a time prior to the existence of any fact which would motivate bias, interest, or corruption on the part of the witness then the prior consistent statements are admissible to rebut the alleged bias

or interest. *See Cole v. State,* 83 Md.App. 279, 299–300, 574 A.2d 326, 335–37 (1990) (noting that the clear rationale for application of Rule 5–802.1(b) is that only prior consistent statements made before the alleged fabrication are rehabilitative and can logically rebut the alleged impeachment). Conversely, statements made when the declarant had an alleged motive to falsify are not relevant to rebut a charge of fabrication. *See People v. Lewis,* 160 Mich.App. 20, 408 N.W.2d 94, 99 (1987) (holding a witness's prior consistent statement inadmissible because the earlier consistent statement was given at a time when the witness had already developed a strong motive to fabricate); *see also State v. Martin,* 135 Ariz. 552, 663 P.2d 236, 239 (1983) (finding it problematic that the "trial court, in admitting the prior consistent statements, made no determination as to when the motive to fabricate began").

In the present case, the Court of Special Appeals, in reliance on *People v. Hayes,* 52 Cal.3d 577, 276 Cal.Rptr. 874, 802 P.2d 376 (1990), expanded our holding in *Holmes* and created a new rule. The intermediate appellate court held that "a witness's prior consistent statement is admissible if made prior to the existence of any one of multiple biases or motives that an opposing party charges, expressly or impliedly, might have influenced the witness's testimony." One of the problematic effects of this rule, when applied to this case, would be that the rule eliminates from consideration any alleged bias that Benjamin had at the time he made the prior statements to the investigating police officers. Thus, any alleged bias or motive Benjamin may have developed after he made his statements would eviscerate any motive that the declarant had to fabricate at the time the statements were made. In postulating this rule, the intermediate appellate court does not explain how the value of prior consistent statements that come after a motive to fabricate are enhanced or become more direct and forceful or truthful to rebut any one of multiple fabrications simply because the statements are a repetition of the prior statements. As Petitioner aptly points out in his brief, the question is how do prior consistent statements gain trustworthiness when a later motive to fabricate arises. In

other words, Petitioner maintains that, "[t]rustworthiness is not enhanced by the declarant gaining motives to fabricate, and there should be no reward granted a witness who has multiple motives" to fabricate statements.

In *People v. Hayes,* the Supreme Court of California held that a statement that a witness, James, made to law enforcement officers was admissible as a prior consistent statement because "it was made before the existence of any one or more of the biases or motives that, according to the opposing party's express or implied charge, may have influenced the witness's testimony." *People v. Hayes,* 276 Cal.Rptr. 874, 802 P.2d at 395 (citations omitted). We note from our review of that case, "James was impeached by evidence that criminal charges were pending against him when he testified, the implication being that James might have testified in a manner favorable to the prosecution in the hope of obtaining leniency in the disposition of the pending charges." *Hayes,* 276 Cal.Rptr. 874, 802 P.2d at 394. The trial judge admitted James's prior statement to rebut the defense's implication of leniency because the criminal charges were not pending against James when the prior statements were made. The trial judge made this decision notwithstanding the fact that James's testimony may have been influenced by multiple biases or motives to fabricate when he made the prior statement.

Notably, in the present case, Benjamin's statements to the investigating police officers were made before he was charged with unauthorized use; nevertheless, Benjamin made the statements after he was stopped by police and under investigation for his alleged participation in a drug transaction. Thus, his prior consistent statements were inadmissible because the motive to fabricate, as alleged by Petitioner, had already arisen.[2] The holding and limited rationale set forth in

---

2. The State argues that when Petitioner objected to the State's request to introduce the prior consistent statements, Petitioner had not yet alleged Benjamin's motive to fabricate at the time of his arrest. We find that the record indicates otherwise. At the very least, during Petitioner's cross-examination of Benjamin, Petitioner asked a series of

*Hayes,* is inconsistent with our interpretation of Rule 5–802.1(b). In our view, it is immaterial that a witness has multiple alleged motives to fabricate. Prior consistent statements are relevant, under Rule 5–802.1(b), only if they were made before the source of the fabrication or improper influence or motive originated. Here, Benjamin had a motive to fabricate his story the moment he knew he was under investigation and/or stopped by police on suspicion of participating in a drug transaction, if not sooner. Even if we were to adopt the view that investigation and arrest do not automatically produce the motive to fabricate and that the trial court must make the express determination as to when and if the alleged motive to fabricate commenced; on the basis of the record before us, the trial judge made no such determination in this case. Thus, on the record before us, there was no basis demonstrated to admit Benjamin's prior consistent statements.

## VI.

Maryland Rule 5–616(c)(2) provides:

(c) **Rehabilitation.** A witness whose credibility has been attacked may be rehabilitated by:

> (2) Except as provided by statute, evidence of the witness's prior statements that are consistent with the witness's present testimony, when their having been made detracts from the impeachment[.]

A prior consistent statement "must meet at least the standard of having some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony." *United States v. Simonelli,* 237 F.3d 19, 27 (1st Cir.2001) (citations and quotations

---

questions indicating that Benjamin had a motive to fabricate when he was stopped by police. For example, Petitioner asked Benjamin if it was him, and not Thomas who sold the drugs, and that when the Police stopped Benjamin, he must have known "there would be more trouble if the police stopped [him] because [he] w[as] selling drugs" than if he merely had drugs on him.

omitted).  The statement must, under the circumstances in which it was given, "detract[ ] from the impeachment," Md. Rule 5–616(c)(2), or "rebut logically the impeachment." *Holmes,* 350 Md. at 426 n. 3, 712 A.2d at 561 n. 3 (citations omitted).  Further in *Holmes* we said:

> Prior consistent statements used for rehabilitation of a witness whose credibility is attacked are relevant not for their truth since they are repetitions of the witness's trial testimony.  They are relevant because the circumstances under which they are made rebut an attack on the witness's credibility.  Thus, such statements by definition are not offered as hearsay and logically do not have to meet the same requirements as hearsay statements falling within an exception to the hearsay rule.

*Holmes,* 350 Md. at 427, 712 A.2d at 561.  *See Hajireen v. State,* 203 Md.App. 537, 557, 39 A.3d 105, 117 (2012) (accord and cases cited therein).

In the present case, defense counsel's attempt to impeach Benjamin was in the lawyer's cross-examination of Benjamin and was summarized in her argument to the jury.  According to counsel, Benjamin lied to the jury about his role in the drug transaction, he lied about the circumstances surrounding the unauthorized use offense, and he lied about his expectation of leniency, in this case. Defense counsel suggested to the jury that it should not believe Benjamin because "he [will] lie[ ] to make himself look better."  The mere fact that Benjamin gave police the same information he testified to at trial, or what he stated to each officer, does not detract from the impeachment undertaken.  Repetition of Benjamin's in-court testimony by police officers does not make Benjamin's testimony any more believable, nor does it undermine the argument presented by the defense, that Benjamin will say anything to look good in the eyes of the jury.  Therefore, because the consistent statements do not "detract from the impeachment" or "rebut logically the impeachment," they cannot be admitted under Md. Rule 5–616(c)(2).

In addition, the prosecutor asked the jury to accept Benjamin's out-of-court statements to the police as true. In arguing to the jury, the prosecutor emphasized that "in fact, [Benjamin has] been consistent the whole time. When he was pulled over by the officers, he was eventually cooperative with them and he told them what happened." According to the prosecutor, Benjamin told Officer Johnson he purchased drugs from Kenny and "he came into court and he told you the same thing." The prosecutor concluded in her closing remarks:

> Everything [Benjamin] said has been **consistent** from day one, **consistent** when the officers initiated the traffic stop and pulled him over, **consistent** when he was advised of his right to remain silent and elected to give a statement, and **consistent**, again, when he was testifying here in court yesterday, **consistence**." (Emphasis added).

The law is settled that "[i]f the proponent of the evidence is asking the jury to rely on what the declarant said, out-of-court, as true (accurate), it is hearsay." Lynn McLain, *Md. Rules of Evidence* 182 (2d ed.2002). In the present case, the prosecutor could not have been relying on Rule 5–616(c)(2) by offering the testimony of the police officers with regard to the statements Benjamin made to them at the time of the stop.[3] The testimony of the officers was offered and relied

---

**3.** In *Holmes,* we pointed out that, "[t]he State is not required to assert the purpose for which it is seeking admission of a prior consistent statement unless asked by the court." We also said that "the trial judge ordinarily is not required to give a limiting instruction in the absence of a request." *Holmes,* 350 Md. at 429, 712 A.2d at 562 (citations omitted). The Court of Special Appeals explained in *McCray v. State,* 122 Md.App. 598, 609, 716 A.2d 302, 308 (1998), that "[b]ecause *Holmes* does not require the State to articulate whether it is seeking to admit the prior consistent statement for substantive or rehabilitative purposes, it places two burdens on the defendant. [Ordinarily], it is incumbent on the defendant to inquire about the basis upon which the State intends to introduce the prior consistent statement. Second, the defendant must request a jury instruction limiting the use of the prior consistent statement for rehabilitative purposes only." We have never said that defendant would have these same burdens if the prior consistent statements were inadmissible. In the present case, the prior consistent statements were clearly offered for their truth to bolster Benjamin's testimony.

upon as substantive evidence to prove that a drug sale took place and that Benjamin was the purchaser and that Petitioner was the seller. This was not a situation where the defense contended that Benjamin made inconsistent out-of-court statements and the officers' testimony was offered to rebut a prior inconsistency. *See Blair,* 130 Md.App. at 596, 747 A.2d at 715 (acknowledging that the consistent statement detracted from defense counsel's impeachment of the witness's inconsistent statement). Although defense counsel maintained that Benjamin was an untruthful witness, to the contrary, the State maintained that Benjamin's story was always consistent *and true,* both in and out of court. The police officers' testimony, therefore, was offered and relied upon by the State to bolster Benjamin's testimony.

■ The testimony of the officers with regard to what Benjamin told them was not admissible under Md. Rule 5–802.1(b) to attack an implication of fabrication or improper influence or motive because Benjamin made the statements after at least one of the alleged motives to fabricate existed. Nonetheless, the State claims even if we assume that Benjamin's statements to the arresting police officers were improperly admitted, any error was harmless because their testimony "tracked [Benjamin's] testimony, and was therefore cumulative." Notably, the State made this same argument to the Court of Special Appeals in *McCray,* 122 Md.App. at 610, 716 A.2d at 308.

In *McCray,* the trial judge improperly allowed Ms. Burgess, the mother of McCray's accomplice to testify about what the accomplice told her about the murder. 122 Md.App. at 602, 607–08, 716 A.2d at 304, 307. The Court of Special Appeals held that the trial court erred in admitting the prior consistent statement of McCray's accomplice, Howell, where the accomplice's statement was made after her motive to lie arose. The court reasoned that, "Howell's motive to fabricate existed from the moment that [the] robbery murder, in which she was admittedly involved, took place." *McCray,* 122 Md.App. at 609–10, 716 A.2d at 308.

On appeal to the Court of Special Appeals, the State argued that the testimony was admissible under Rule 5–802.1(b), and, if admitted in error, the error was harmless. *McCray*, 122 Md.App. at 610, 716 A.2d at 308. It did not and could not argue, in that case, that it had offered the statements under Rule 5–616(c) because the State informed the trial judge that the statements were offered under Rule 5–802.1(b). *Id.* Just as here, the State argued, in *McCray*, that the error was harmless because the same evidence had been placed before the jury during Howell's own testimony. Therefore, according to the State, "any error in allowing Ms. Burgess to testify was cumulative and not prejudicial." *Id.* The Court of Special Appeals disagreed. The intermediate appellate court explained that even though the prior consistent statements were cumulative "that does not make them harmless because it is their consistency that is the very nature of the harm." According to the court, "[b]y allowing Ms. Burgess to testify about Howell's prior consistent statements, the State impermissibly bolstered Howell's credibility." *Id.*

The bolstering in *McCray* was allowed under circumstances similar to those in the present case where "the State's case depend[ed] virtually exclusively on the credibility of a witness." *Id.; see State v. Cox*, 298 Md. 173, 184–85, 468 A.2d 319, 324–25 (1983) (noting that when one side's case is based on the testimony of one witness, the Court "must be satisfied that there is no reasonable possibility that the evidence [erroneously admitted] may have contributed to the rendition of the guilty verdict") (citations and quotations omitted). Accordingly, on the basis of the record before us, Benjamin's prior statements were not admissible under Rule 5–802.1(b) because of the premotive requirement, and were not admissible under Rule 5–616(c) because they were not offered or relied upon for rehabilitative purposes only and thus, the statements were not relevant. Further, on the basis of the record before us, we cannot say beyond a reasonable doubt that the impermissible bolstering of Benjamin's testimony had no effect on the outcome of this case.

112

JUDGMENT OF THE COURT OF SPECIAL APPEALS IS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. MONTGOMERY COUNTY TO PAY THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.

Judge BATTAGLIA joins in the judgment only.